UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ERIC J. FLANNERY, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 23-2804 (ABJ) |
| MARK ECKENWILER *in his personal capacity*, *et al.*, | ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION

Plaintiffs Eric J. Flannery, and the restaurant he owns and operates, Drane Flannery Restaurant, LLC ("The Big Board"), filed this action against defendants Mark Eckenwiler, Karen Wirt, Christine Healey, Drew Courtney, Joel Kelty, and Jay Adelstein, stating that they were being sued in their personal capacities. *See* Compl. [Dkt. # 1]. Defendants all serve or once served as elected commissioners on the D.C. Advisory Neighborhood Commission 6C ("ANC 6C"). Compl. ¶¶ 18–23. The complaint consists of one count brought under 42 U.S.C. § 1983 alleging that defendants unlawfully retaliated against Flannery for his exercise of his First Amendment rights. Compl. at 12. Specifically, plaintiffs allege that:

> To retaliate against Mr. Flannery for his First Amendment-protected expressions of disagreement with the District's COVID policies, Mr. Eckenwiler—while holding an official position as commissioner and representative of ANC 6C—posted disparaging comments about The Big Board on Twitter. Additionally, Defendants—through their official positions as commissioners and of the ANC 6C—filed and prosecuted a frivolous protest challenging The Big Board's liquor license renewal.

Compl. ¶ 85.  Plaintiffs seek a declaration that defendants' conduct violated their rights, damages including reimbursement for the attorneys' fees expended while defending against the liquor license protest, and punitive damages, as well as costs and attorneys' fees.  Compl. at 14.

Defendants have moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  *See* Defs.' Mot. to Dismiss [Dkt # 18]; Mem. in Supp. of Defs.' Mot. to Dismiss [Dkt. # 18-1] ("Mot."), and the motion is opposed and fully briefed.  *See* Pls.' Mem. in Opp. to Defs.' Mot. to Dismiss [Dkt. # 19] ("Opp."); *see* Defs.' Reply in Supp. of Defs.' Mot. to Dismiss [Dkt. #21] ("Reply").

While the Court finds the allegations concerning the flimsy and unsupported nature of the protest quite troubling, and it has not determined that it would find public officials to be immune to claims that they knowingly initiated an effort to have a state-issued license revoked on frivolous grounds, it does not need to reach that question because plaintiffs have failed to plausibly allege a necessary element of a First Amendment retaliation claim: that plaintiffs' constitutional speech was the but-for cause of the defendants' actions.  Therefore, the Court will **GRANT** defendants' motion to dismiss.

## BACKGROUND

Plaintiff Eric J. Flannery is the owner and operator of The Big Board, a local tavern located in ANC 6C's jurisdiction in Washington, D.C.  Compl. ¶¶ 28–29.  In December 2021, D.C. Mayor Muriel Bowser issued two emergency orders requiring restaurants to enforce the city's COVID-19-related mask mandate and to check customers' vaccination status beginning in mid-January 2022.  Compl. ¶¶ 2, 27, citing Mayor's Order 2021-147, 68 D.C. Reg. 13954 (Dec. 20, 2021), and Mayor's Order 2021-148, 68 D.C. Reg. 14222 (Dec. 22, 2021). "Both orders were issued for an initial 60-day period."  Compl. ¶ 2.  Flannery disagreed with the District's decision to impose the

mandates, and he alleges that he "express[ed] his disapproval and disagreement on social media and elsewhere." Compl. ¶ 3. In January 2022, he published a tweet through the restaurant's account announcing that "everyone is welcome" at The Big Board. Compl. ¶ 30. In February 2022, the District's government suspended The Big Board's operating and liquor licenses indefinitely, forcing the restaurant to close for a period of time that is not set forth in the complaint. Compl. ¶ 31. Following negotiations between the District and The Big Board, the District agreed to lift the suspension of The Big Board's operating license, as did the District of Columbia's Alcoholic Beverage Control Board ("ABCB") with respect to its liquor license. Compl. ¶ 32; *see also* D.C. Alcoholic Beverage Control Bd., Order No. 2022-110, 22-CMP-00006 (Mar. 16, 2022) (lifting ABC license suspension following lapse of emergency COVID restrictions and approving offer-in-compromise).

According to the complaint, "[t]hrough all of this, Mr. Flannery continued to express his views opposing the mandates and the government's treatment of his restaurant by posting on Twitter and giving media interviews." Compl. ¶ 33. And plaintiffs allege that defendant Mark Eckenwiler, a commissioner of the ANC 6C, "showed his disdain for Mr. Flannery's expressed views and his animosity and animus towards Mr. Flannery through a series of attack tweets." Compl. ¶ 34. Among the examples listed in the complaint is a tweet from Eckenwiler on an unspecified date in 2022 in which he allegedly shared screenshots of The Big Board's own tweets and commented, "When you've decided to flout the vaccine mandate taking effect on Jan. 15 at DC bars & restaurants, but don't quite have the stones to say so & instead resort to anti-vaxxer dog-whistling." Compl. ¶ 35a. Plaintiffs also point to a screenshot Eckenwiler posted of an ABCB notice of a meeting concerning The Big Board's liquor license with the comment, "Actions have consequences," Compl. ¶ 35b, and his tweet containing a picture of the District Health

Department's closure notice on the establishment with the added comment, "Play stupid games, win regulatory prizes!" Compl. ¶ 35c.

Approximately 8 months after the suspension, on or about October 21, 2022, The Big Board filed to renew its liquor license. Compl. ¶ 36. The Alcohol Beverages Regulation Administration ("ABRA") granted the renewal but, in accordance with District law, it permitted parties to protest the renewal, which can lead to the revocation of an entity's liquor license. Compl. ¶ 37–38.

The ANC 6C regularly holds meetings to discuss liquor license renewal applications within the Commission's jurisdiction. Compl. ¶ 39. On November 7, 2022, the ANC 6C's Alcoholic Beverage Licensing Committee held a public meeting at which The Big Board's liquor license was discussed, and plaintiff Flannery attended. Compl. ¶ 40. Flannery alleges that during a discussion of The Big Board's license, Eckenwiler stated, "I mean just some of the things he's said publicly, we should go ahead and protest the license." Compl. ¶¶ 40, 43. According to Flannery, none of the other committee members expressed disagreement with or challenged that statement. Compl. ¶ 44. On November 9, 2022, a meeting of the full ANC 6C was held at which The Big Board's liquor license was discussed, and all members voted to file a formal protest of the restaurant's license renewal. Compl. ¶ 48, 50. The Commission designated Eckenwiler to serve as the body's representative for the protest. Compl. ¶ 49.

According to the complaint, the written protest lodged by the ANC was based on three grounds: 1) that "The Big Board's operations have had a negative effect on 'real property values'"; 2) that "The Big Board has had a negative impact 'on the peace, order, and quiet, including the noise and litter provisions set forth in . . . the D.C. Code"; and 3) that "The Big Board has had a negative 'effect upon the residential parking needs and vehicular and pedestrian safety.'"

Compl. ¶ 51. Plaintiffs allege that "[n]one of these grounds were valid or had any basis in law or fact," Compl. ¶ 53, and that "at the time that the ANC 6C voted for and filed the protest, every member of the commission knew that these grounds were false." Compl. ¶ 54.

According to the complaint, Eckenwiler rebuffed multiple attempts by Flannery and The Big Board's attorney to discuss or attempt to resolve the protest over the course of the next several months. Compl. ¶ 55–62. On the last day before a scheduled status conference with the ABRA, Eckenwiler transmitted a settlement agreement proposing terms under which the ANC 6C would withdraw its protest. Compl. ¶¶ 63–64. Plaintiffs state that the proposed settlement "did not address the alleged problems raised in the ANC 6C's protest," but rather "demanded that The Big Board take actions inconsistent with its license." Compl. ¶ 65. The proposal "would have required The Big Board to close early, to provide food at all hours when it is open[,] . . . prohibit live music, eliminate outdoor seating . . ., change food delivery times . . ., and more." Compl. ¶ 66.

One February 26, 2023, The Big Board's attorney requested in writing that Eckenweiler provide "any evidence supporting the three items listed in the ANC 6C's protest," but allegedly nothing was ever provided. Compl. ¶ 67. As of the date of the filing of the complaint, The Big Board's attorneys had still not received any of the requested evidentiary material from Eckenwiler or anyone representing the ANC. Compl. ¶ 71. The attorney also submitted a proposed revised settlement agreement, to which neither Eckenwiler nor the ANC ever responded. Compl. ¶ 70.

In February 2023, ABRA conducted its own independent investigation into the claims in the protest, monitoring The Big Board on eight separate occasions, and it found no violations to support the ANC's allegations. Compl. ¶ 77–78. On March 7, 2023, plaintiffs and Eckenwiler participated in a mandatory mediation session scheduled by the ABRA, but according to the complaint, Eckenwiler spoke for less than 45 seconds, announcing that he had attended the call as

required and then hanging up.  Compl. ¶ 75.  The ANC 6C voluntarily withdrew its protest the following day, on or about March 8, 2023.  Compl. ¶ 79.

Plaintiffs filed suit in this Court on September 25, 2023, alleging that defendants unlawfully retaliated against Flannery for engaging in speech protected by the First Amendment. Compl. ¶¶ 81–89.  Plaintiffs allege that defendant Eckenwiler, individually, retaliated against Flannery when he published "disparaging comments about The Big Board on Twitter." Compl. ¶ 85.  Plaintiffs also allege that all defendants "filed and prosecuted a frivolous protest challenging The Big Board's liquor license renewal."  Compl. ¶ 85.  Defendants have moved to dismiss for failure to state a claim and on the basis of qualified immunity.  Mot. at 1.

## STANDARD OF REVIEW

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In *Iqbal*, the Supreme Court reiterated the two principles underlying its decision in *Twombly*:  "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Iqbal*, 556 U.S. at 678.  And "[s]econd, only a complaint that states a plausible claim for relief survives a motion to dismiss."  *Id*. at 679, citing *Twombly*, 550 U.S. at 556.

A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id*.  A pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," *id*.,

quoting *Twombly*, 550 U.S. at 555, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

In evaluating a motion to dismiss under Rule 12(b)(6), a court must "treat the complaint's factual allegations as true and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal citation omitted), quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979); *see also Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011), quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005). Therefore, when considering a motion to dismiss, a court must construe a complaint "liberally in the plaintiff's favor." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Nevertheless, "the court need not accept inferences" drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the court accept plaintiff's legal conclusions. *Id.*; *see also Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). In ruling upon a motion to dismiss for failure to state a claim, a court may ordinarily consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002), citing *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624–25 (D.C. Cir. 1997).

**ANALYSIS**

**I.    The complaint fails to state a claim for a First Amendment violation.**

Section 1983, enacted as part of the Civil Rights Act of 1871, provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

Here, plaintiffs allege that defendants violated Flannery's First Amendment right of freedom of expression in two ways: first, that "Mr. Eckenwiler—while holding an official position as commissioner and representative of ANC 6C—posted disparaging comments about The Big Board on Twitter." Second, that "Defendants—through their official positions as commissioners and of the ANC 6C—filed and prosecuted a frivolous protest challenging The Big Board's liquor license renewal." Compl. ¶ 85.

The First Amendment "prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech." *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019), quoting *Hartman v. Moore*, 547 U.S. 250, 256 (2006) (quotation marks omitted). To state a claim for retaliation in response to First Amendment activities, a plaintiff must plausibly allege "(1) that he engaged in protected conduct, (2) that the government 'took some retaliatory action sufficient to deter a person of ordinary firmness in plaintiff's position from speaking again;' and (3) that there exists 'a causal link between the exercise of a constitutional right and the adverse action taken against him.'" *Doe v. District of Columbia*, 796 F.3d 96, 106 (D.C. Cir. 2015), quoting *Aref v. Holder*, 774 F. Supp. 2d 147, 169 (D.D.C. 2011).

### A.    Plaintiffs fail to state a claim for retaliation based on defendant Eckenwiler's tweets.

Plaintiffs allege that Eckenwiler unlawfully retaliated against them by posting "disparaging comments about The Big Board on Twitter" while Eckenwiler was "holding an official position as commissioner and representative of ANC 6C." Compl. ¶ 85. Defendant Eckenwiler argues that this part of the claim should be dismissed for two reasons: he argues that (1) his conduct does not implicate the First Amendment because the purported tweets were "directed at [p]laintiffs' decision not to abide by the Mayor's orders, not [p]laintiffs' speech or expressive conduct," *see* Mot. at 8; and (2) even if considered "speech" for purposes of the First Amendment, the tweets in question do not rise to the level of "adverse action." *See* Mot. at 9.

In this Circuit, a retaliatory action is materially "adverse" where it is "sufficient to deter a person of ordinary firmness in plaintiff's position from speaking again." *Aref v. Lynch*, 833 F.3d 242, 258 (D.C. Cir. 2016). Even if one were to accept plaintiffs' conclusory allegation that Eckenwiler targeted Flannery for his speech rather than his defiance of the Mayor's orders, Eckenwiler's complained-of response amounted to nothing more than more speech: verbal criticism unrelated to any official ANC governmental function. Eckenwiler re-posted and disparaged plaintiff's own tweets about the pandemic as "dog whistling," and he criticized Flannery's overall course of conduct as "playing games" for which he has had to face "consequences." Compl. ¶ 35. There is nothing scathing or unduly personal about any of it.

Even coming from a person who serves as an ANC commissioner, this, without more, does not give rise to a constitutional deprivation for First Amendment purposes. *See Block v. Meese*, 793 F.2d 1303, 1313 (D.C. Cir. 1986) (stating that "[w]e know of no case in which the First Amendment has been held to be implicated by governmental action consisting of no more than governmental criticism of the speech's content"). The Supreme Court underscored this in a case

9

involving members of the board of trustees of a public community college censuring one of their colleagues. *See Houston Cmty. Coll. Sys. v. Wilson*, 595 U.S. 468, 478 (2022) ("The First Amendment surely promises an elected representative like [plaintiff] the right to speak freely on questions of government policy. But just as surely, it cannot be used as a weapon to silence other representatives seeking to do the same."). And plaintiff does not allege any facts that would support the inference that ordinary tweets on a social media platform in response to one's own would chill an ordinary person from speaking out again; indeed sharing, commenting, liking, and re-tweeting or re-posting is the daily currency of social media use.[1] Because plaintiffs have failed to plausibly allege that Eckenwiler's tweets in and of themselves were sufficiently adverse to sustain a retaliation action, that portion of Count I predicated solely on Eckenwiler's social media communications can be dismissed for failure to state a claim on that basis alone.

      **B.**      **The complaint fails to state a plausible claim that defendants' protest of the liquor license was in retaliation for protected speech.**

Count One of the complaint also alleges that defendants, "through their official positions as commissioners and of ANC 6C – filed and prosecuted a frivolous protest challenging The Big Board's liquor license renewal" in order to "retaliate against Mr. Flannery for his First Amendment-protected expressions of disagreement with the District's COVID policies." Compl. ¶ 85. Defendants contend that their decision to protest The Big Board's liquor license does not qualify as an "adverse action" under the First Amendment retaliation framework, and that the complaint reveals that plaintiffs' constitutionally protected expression was not the "but-for" cause of their actions. *See* Mot. at 10–15. They also argue that, even if plaintiffs' allegations are

---

1    This ruling does not express any view on the question of whether a campaign of trolling, harassment, "doxing," "catfishing," or calling for a boycott on social media could be adverse, as nothing of the sort was alleged.

sufficient to state a claim for First Amendment retaliation, they cannot be held liable because they are entitled to qualified immunity.

District of Columbia law permits various individuals or entities to protest the renewal of a liquor license, including abutting property owners, a group of at least five residents sharing a common ground for protest, a citizens' association, the Mayor, the Metropolitan Police Department and, as relevant here, an "affected ANC." D.C. Code § 25-601.  If a protest is filed, the Alcoholic Beverage Control Board ("ACBC") schedules a protest hearing, D.C. Code § 25-432, and then the ACBC makes the ultimate determination about whether a license should be renewed. *Id.* § 25-433.  Although the ACBC is not required to follow an ANC's recommendations, it is required to give those recommendations "great weight" in accordance with District law. *Id.* § 25-609.

Defendants contend that the filing of a protest is insufficiently "adverse" to amount to a First Amendment violation.  Mot. at 11.  According to them, "[t]hroughout the renewal process and resolution of the protest, Plaintiffs' license was never suspended, and The Big Board was never prevented from operating.  A protest, which serves to notify the decisionmaker of concerns and start a process for a hearing, does not prevent ongoing business and would not deter an individual of ordinary firmness from speech and expressive conduct." *Id.*, citing *Rocky Mt. Rouges, Inc. v. Town of Alpine*, 375 F3d App'x 887, 897 (10th Cir. 2010).

The Court disagrees.  The question is not whether an allegedly adverse action succeeds in its aim but whether it is "sufficient to deter a person of ordinary firmness in plaintiff's position from speaking again." *Doe*, 796 F.3d at 106; *Toolasprashad v. Bureau of Prisons*, 286 F.3d 576, 585 (D.C. Cir. 2002) ("The relevant question is not whether a transfer actually interferes with a particular prisoner's ability to exercise his rights but whether the threat of a transfer would, in the

first instance, inhibit an ordinary person from speaking."). The threat of losing a license essential to one's business – and the resulting loss of revenue that revocation would entail – is sufficiently onerous to deter a business owner from speaking out again. *See Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 67 (1963) (finding a First Amendment violation based on "the threat of invoking legal sanctions and other means of coercion, persuasion, and intimidation" by a legislatively established commission). The fact that private individuals may collectively pursue the same action does not, as defendants suggest, "undermine[] an inference that the mere fact of a protest would deter an ordinary person from speaking," *see* Reply at 4, particularly given the legal provisions governing the D.C. licensing process and the role an ANC can play. *See* D.C. Code § 25-609 (requiring the ACBC to give ANC recommendations "great weight" in its licensing decisions). The purpose of the First Amendment is to restrain the government from using its authority to hamper expression, and the fact that defendants lodged a protest here – not as a collection of individual citizens, but as the ANC – afforded their protest a degree of deference from the ultimate decisionmaker that made it more likely to have a chilling effect. So Count One will not be dismissed on that basis.

Plaintiffs allege that Flannery "invoked his First Amendment rights in expressing his disagreement with the District's COVID policies by posting on Twitter, giving media interviews, refusing to obey orders he understood to be unlawful, and filing a lawsuit challenging the constitutionality of such orders." Compl. ¶ 54. Defendants do not dispute that at least some of these activities are protected conduct, nor could they; "[t]he First Amendment reflects 'a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open,'" *Snyder v. Phelps*, 562 U.S. 443, 452 (2011), quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964), and activities like posting on social media and offering media

interviews on a topic of public concern lie at its core. And there is no dispute that the protest was filed after the plaintiff made his views known. But that is not the end of the inquiry.

"To satisfy the causation link, a plaintiff must allege that his or her constitutional speech was the 'but for' cause of the defendants' retaliatory action," *Doe*, 796 F.3d at 107, "meaning that the adverse action against the plaintiff[s] would not have been taken absent the retaliatory motive." *Comm. on Ways and Means, U.S. House of Representatives v. U. S. Dep't of Treasury*, 45 F.4th 324, 340 (D.C. Cir. 2022), quoting *Nieves v. Bartlett*, 587 U.S. 391, 399 (2019).

Plaintiffs allege that Flannery "invoked his First Amendment rights in expressing his disagreement with the District's COVID policies by posting on Twitter, giving media interviews, refusing to obey orders he understood to be unlawful, and filing a lawsuit challenging the constitutionality of such orders." Compl. ¶ 85. The Court is bound to take this factual allegation as true, but it need not accept his legal conclusions that each of the alleged activities can be properly characterized as "expressive" or as an exercise of his First Amendment rights.

While many forms of conduct may be engaged in for communicative purposes, the Supreme Court has rejected the view that "conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea." *United States v. O'Brien*, 391 U.S. 367, 376 (1968). In *O'Brien,* the Supreme Court was asked to invalidate the conviction of a young man during the Vietnam era for burning his draft card, an act that, at the time, was imbued with symbolic potential. Yet the Court announced:

> [E]ven on the assumption that the alleged communicative element in O'Brien's conduct is sufficient to bring into play the First Amendment, it does not necessarily follow that the destruction of a registration certificate is constitutionally protected activity. This Court has held that when 'speech' and 'nonspeech' elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms.

*Id.* The case came before the Supreme Court in a different posture than the instant case, as the Court was being asked to strike down the statutory provision prohibiting the destruction of a Selective Service registration certificate. But it is notable that the opinion took into consideration whether the regulation furthered an important or substantial government interest and whether the incidental restriction on alleged First Amendment freedoms was not greater than necessary to further that interest. *Id.* at 377. Here, plaintiffs were admittedly refusing to abide by health and safety regulations, *see* Mayor's Order 2021-147 § I.1, 68 D.C. Reg. 13954 (Dec. 20, 2021) (justifying governmental action because "[t]he COVID-19 pandemic, including exponential spread of its Omicron variant, continues to threaten the health and welfare of District residents, workers, and visitors."); Mayor's Order 2021-148 § I.1, 68 D.C. Reg. 14222 (Dec. 22, 2021) (same), and the complaint reveals that city officials could and did respond to that conduct in isolation without restricting plaintiff's ability to continue to express his views about that at all. *See* Compl. ¶¶ 31– 33 (alleging that the District's government suspended The Big Board's operating and liquor licenses, that the parties engaged in negotiations, and that "through all of this, Mr. Flannery continued to express his views opposing the mandates and the government's treatment of his restaurant . . . .").

For those reasons, the complaint does not plausibly allege that plaintiff's exercise of his First Amendment rights was the but-for cause of the defendant's protest, since he explicitly alleges that the protest was in reaction to his unprotected actions – that is, his refusal to obey the orders – among other things. Compl. ¶ 85. Indeed, there are other allegations in the complaint that specifically tie the Commissioners' reactions to plaintiff Flannery's conduct, as opposed to his speech. *See* Compl. ¶ 11 ("Upon information and belief, Defendant Drew Courtney pushed the ANC 6C to vote for and file this protest because of The Big Board's 'bad behavior in recent

years.'"); Compl. ¶¶ 35(a) and (b) (listing Eckenwiler's tweets responding to The Big Board posts with "when you've decided to flout the vaccine mandate . . ." and "[a]ctions have consequences.").[2]

At best, plaintiffs allege that Flannery engaged in both speech and a violation of law that he calls expressive conduct, and that defendants were reacting in varying ways to the combination of his statements and his defiance of the Mayor's Orders. *See* Compl. ¶ 88 ("But for Mr. Flannery's speech and expressive conduct . . . [d]efendants would not have filed and/or maintained the protest against The Big Board's liquor license."). It is not disputed that plaintiff engaged in certain

---

2   Even if one were to treat plaintiff's characterization of his admitted defiance of the Mayor's Orders as "expressive" as a factual allegation instead of a legal conclusion, what he would be alleging, at best, is that his "refusing to obey orders" was a mixture of expression and conduct. *See* Compl. ¶ 84. It is true that the First Amendment protects more than pure speech; it also protects conduct that is "inherently expressive." *Rumsfeld v. Forum for Acad. & Institutional Rts.*, 547 U.S. 47, 66 (2006). *See also Texas v. Johnson*, 491 U.S. 397, 404 (1989) ("[W]e have acknowledged that conduct may be sufficiently imbued with elements of communication to fall within the scope of the First and Fourteenth Amendments.") (internal citations omitted). Yet, as the Supreme Court has explained, "[i]n deciding whether particular conduct possesses sufficient communicative elements to bring the First Amendment into play, we have asked whether an intent to convey a particularized message was present, and whether the likelihood was great that the message would be understood by those who viewed it." *Id.* at 404 (internal citations and alterations omitted). The communicative aspect of the event must be "overwhelmingly apparent" and not simply a "kernel of expression," *Rumsfeld*, 547 U.S. at 66 (2006), citing *Johnson*, 491 U.S. at 406; *City of Dallas v. Stanglin*, 490 U.S. 19, 25 (1989), and the First Amendment may not apply if the message is not self-evident from the conduct itself, but it is created "by the speech that accompanies it." *Rumsfeld* 547 U.S. at 66. "The fact that such explanatory speech is necessary is strong evidence that the conduct at issue here is not so inherently expressive that it warrants protection." *Id.* Here, plaintiff alleges that his non-compliance was preceded and accompanied by numerous public statements of his views, and the conclusion that plaintiffs were engaging in some form of civil disobedience would not have been "overwhelmingly apparent" from the mere presence of customers without masks in the tavern without further explanation. *See Coronavirus 2019 (COVID-19): Mask Guidance*, DC Health (Dec. 23, 2021), https://perma.cc/R2YC-JFW7 (masks were not required when a person was "actively eating or drinking.")

protected activities, including posting on social media, giving interviews, and even initiating lawsuits challenging the legality of the District's COVID regulations. *See* Reply at 6. But because plaintiffs' own complaint explicitly asserts that members of the ANC 6C were motivated, at least in part, to protest The Big Board's liquor license due to plaintiffs' unprotected conduct – his willful noncompliance with the District's Health and Safety regulations – the complaint fails to state a plausible claim that Flannery's constitutionally protected expression was the but-for cause of the defendants' action. Therefore, plaintiffs' claims for unlawful retaliation will be dismissed, and the Court need not reach the other grounds advanced for dismissal, such as qualified immunity.

## CONCLUSION

For the foregoing reasons, the Court finds that plaintiffs' complaint fails to state a claim upon which relief could be granted and defendants' motion to dismiss [Dkt. # 18] under Fed. R. Civ. P. 12(b)(6) will be **GRANTED**.

A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE: September 30, 2024